UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KWAME BOAKYE-YIADOM,

                              Plaintiff,                          <u>**MEMORANDUM & ORDER**</u>

        -against-                                                 09 CV 622  (DRH) (ARL)


JOSEPH A. LARIA, individually, CHARLES
RENFROE, individually, JOANN SIMMONS,
individually, GLADYS RIVERA, individually,
SHARLEEN RESHARD, individually,
PATRICIA W. WRIGHT, individually,
CHARLES PLANZ, individually, KENNETH
STUBBOLO, individually, LUZ VALENTINE,
individually, and HEMPSTEAD UNION FREE
SCHOOL DISTRICT,

                              Defendants.
-----------------------------------------------------------X
**APPEARANCES:**

**LEEDS BROWN LAW, P.C.**
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, NY 11514
By:     Rick Ostrove, Esq.
        Thomas Ricotta, Esq.


**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Attorneys for Defendants
77 Water Street, Suite 2100
New York, NY 10005
By:     Peter J. Biging, Esq.
        Joanne J. Romero, Esq.
        Samuel C. Watkins, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Kwame Boakye-Yiadom ("plaintiff" or "Boakye-Yiadom") commenced this action against defendants Hempstead Union Free School District (the "School District"), Joseph Laria, Charles Renfroe, Joann Simmons, Gladys Rivera, Sharleen Reshard, Patricia Wright, Charles Planz, Luz Valentine, and Kenneth Stubbolo (collectively, the "defendants"), alleging that the defendants violated his constitutional rights, pursuant to 42 U.S.C. §§ 1981, 1983 and 1985(3), and his rights under the New York State Human Rights Law ("NYHRL"), pursuant to N.Y. EXEC. LAW § 296, when they discriminated against him and subjected him to a hostile work environment due to his race, skin color, and national origin. Plaintiff also alleges that the School District violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*. when it retaliated against him for engaging in protected activity. Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking dismissal of plaintiff's Complaint in its entirety. For the reasons that follow, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

The material facts, drawn from the Complaint, the parties' Local Civil Rule 56.1 Statements, and the annexed exhibits are undisputed unless otherwise noted.

Boakye-Yiadom is a Black male of Ghanaian-West African national origin who speaks with a heavy accent. He began his employment with the School District on April 3, 2006 as an Assistant Superintendent for Business and Operations. In this capacity, plaintiff was directly responsible for the business affairs of the School District and the administration and supervision

of facilities planning. These responsibilities included performing tasks such as administering the budget, controlling the day-to-day expenditures of the district as well as preparing and submitting fiscal and facilities plans and reports to the New York State Education Department ("SED"). (Defs.' 56.1 ¶ 9 & Ex. 5.) Plaintiff reported directly to the School District Superintendent. At the time of his hire up through July 2008, the Superintendent was non-party Nathaniel Clay. Plaintiff received a positive annual evaluation for each of the three school years that he worked under Clay. (Pl.'s Exs. 1-4.)

After Clay retired, Joseph Laria ("Laria") was appointed to the position of Interim Superintendent on July 14, 2008, and became Boakye-Yiadom's supervisor. The relationship between Laria and plaintiff was strained from the start. Plaintiff contends that on Laria's first day, he threatened to terminate him. (Defs.' Ex. 33.) Then, upon Laria's recommendation, the School District's Board of Education (the "Board") appointed defendant Kenneth Stubbolo ("Stubbolo") as Fiscal Oversight Management Advisor, effective August 25, 2008.[1] (Defs.' Ex. 24.) In this capacity Stubbolo served as an agent to the Board and Superintendent and had "administrative authority" over the business office administrators, which included plaintiff. In addition, the business office administrators had to report to the Superintendent through Stubbolo. (Defs.' 56.1 ¶ 118 & Ex. 34.) Plaintiff also asserts that sometime in August or September 2008 Laria told him: "With your accent, who is going to make you a superintendent?" (Defs.' Ex. 10 ("Boakye-Yiadom Dep. II") at 271.) Laria denies ever making such a remark and instead claims

---

[1] Stubbolo held many positions at the School District before plaintiff's employment, including: Interim Assistant Superintendent for Business and Operations from June 2004 to November 2004; Consultant for Business and Operations from July 2005 until October 2005; and Deputy Superintendent from October 2005 until March 2006. (Defs.' 56.1 ¶ 37.)

that he told the plaintiff that he could not understand him at one point during the conversation. (Laria Decl. ¶ 50.)

Based on numerous alleged incidents of race, color, and national origin discrimination, Boakye-Yiadom filed a Charge of Discrimination with the EEOC ("EEOC Charge") on September 26, 2008.[2] (Defs.' 56.1 ¶ 265 & Ex. 94.) On that same day, Laria issued plaintiff a negative first quarter performance review addressing twenty-one unsatisfactory performance areas.[3] (Defs.' Ex. 75.) Boakye-Yiadom was the only employee to receive a first quarter performance review from Laria. In a memorandum dated October 6, 2008, Plaintiff disputed the negative performance review. (*Id.*, Ex. 76.)

On October 17, 2008 Laria told Boakye-Yiadom that he was recommending to the Board that he be terminated. Laria also placed plaintiff on administrative reassignment to his home until November 20, 2008 – the date the Board would meet and vote on Laria's recommendation to terminate the plaintiff. (Defs.' 56.1 ¶¶ 257-58 & Ex. 92.) On November 20, the Board approved Laria's recommendation to terminate plaintiff's employment and plaintiff's employment ended on December 22, 2008. (Defs.' 56.1 ¶ 262.) Defendants Charles Renfroe, Joann Simmons, Gladys Rivera, and Sharleen Reshard served on the Board at the time plaintiff's termination was approved.

---

[2] Due to the number of alleged incidents, the Court will address them as they relate to the particular claims being asserted.

[3] Although plaintiff did not file the EEOC Charge until September 26, 2008, plaintiff's counsel sent a copy of the EEOC Charge to the School District by overnight mail on September 24, 2008. (Pl.'s Ex. 10.) It appears that the School District received this mailing on September 25, 2008. (*Id.*, Ex. 11.)

## *DISCUSSION*

### I.     *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the

allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *see Gelb v. Bd. of Elections of N.Y.C.*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases, *see Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.

1985). "[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II.  *Discrimination Claims*[4]

### A.  *Legal Standard*

Claims of employment discrimination, whether brought under Title VII, Section 1981, or Section 1983, are all analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004).   The same is true for claims brought under the NYHRL.  *See Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 418 (2d Cir. 2011); *Chacko v. DynAir Servs., Inc.*, 2001 WL 930774, at *7 (E.D.N.Y. June 14, 2001).

Under this burden shifting test, a plaintiff must first establish a prima facie case of discrimination.  *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).  To satisfy this burden a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination." *Ruiz,* 609 F.3d at 491-92.  The burden of establishing a prima facie case of employment

---

[4] The Complaint specifically alleges race, skin color, and national origin discrimination pursuant to 42 U.S.C. §§ 1981, 1983 and N.Y. EXEC. LAW § 296.

discrimination has been described as "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the employment decision. *Ruiz*, 609 F.3d at 492. This burden is one of production, not persuasion, and it involves no credibility assessment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Wentworth v. Hedson*, 493 F. Supp. 2d 559, 569 (E.D.N.Y. 2007). If such a showing is made, the burden returns to the plaintiff to show by a preponderance of the evidence that the reasons proffered by the defendant were not its true reasons but were a pretext for actual discrimination. *See Reeves*, 530 U.S. at 143; *Ruiz*, 609 F.3d at 492.

### B.    *Prima Facie Case*

Defendants challenge plaintiff's ability to establish the fourth element of his prima facie case, namely that plaintiff's termination took place under circumstances giving rise to an inference of discrimination.[5] In particular, defendants argue that plaintiff's discrimination claims fail as a matter of law since Boakye-Yiadom has failed to identify any similarly situated employees who were treated differently than he was.

---

[5] Although defendants also challenge plaintiff's ability to show that he was qualified for the position he held, the Court notes that defendants' attempt to raise an argument for the first time in their reply brief is improper. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *see also Am. Hotel Int'l Grp. Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) ("[A] district court is free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment."). In any event, plaintiff's burden on this second element is to "show only that he possesses the basic skills necessary for performance of [the] job." *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (internal quotation marks omitted). Notwithstanding defendants' dissatisfaction with how plaintiff performed his job, there is nothing in the record to conclude that plaintiff lacked the necessary basic skills for the position.

To raise an inference of discrimination by disparate treatment evidence, meaning that a plaintiff employee was treated less favorably than similarly situated employees outside his protected group, such evidence must demonstrate "that [his] co-employees were subject to the same performance evaluation and discipline standards" and that they were not disciplined despite engaging in comparable conduct." *Graham*, 230 F.3d at 40; *see also Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (internal quotation marks omitted).

Plaintiff identifies "the high level administrators within the Superintendent's cabinet" as the similarly situated employees in this case. In addition to plaintiff (who served as Assistant Superintendent of Business and Operations), the Superintendent's cabinet consisted of the following administrators: (1) the Assistant Superintendent for Elementary Education; (2) the Assistant Superintendent for Secondary Curriculum; (3) the Assistant Superintendent for Funded Programs, Compliance and School Improvement; and (4) the Assistant Superintendent/Director for Personnel. (Pl.'s Ex. 23.) Other than listing job titles, Plaintiff not only fails to identify who these individuals are but never proffers any evidence as to their skin color, race and/or national origin.[6] Such failures is a basis for denial at the outset. *See Goldman v. Admin. for Children's Servs.*, 2007 WL 1552397, at *7 (S.D.N.Y. May 29, 2007) (finding that "'sweeping allegations,' in which plaintiff cannot even identify, and presents no evidence of, the race or national origin of

---

[6] There is evidence to suggest that, when plaintiff was first hired, the cabinet members were all women of African American descent. (Defs.' 56.1 ¶¶ 164-65.) However, it is unclear whether these same women were members of the cabinet during the period plaintiff claims to have been treated dissimilarly.

alleged comparators, can not satisfy the similarly situated test").

Even assuming that the cabinet administrators differed in skin color, race and/or national origin from the plaintiff, Boakye-Yaidom fails to establish that these individuals were similarly situated to him. Other than mentioning in passing that the other cabinet administrators also reported to and were evaluated by the Superintendent, plaintiff does not show that the cabinet administrators engaged in "comparable conduct." *See Graham*, 230 F.3d at 40 ("[C]omparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases . . . ."). Plaintiff attempts to show comparable conduct by first claiming that creating the annual budget for the School District was a collective process for the whole cabinet and not solely his responsibility. While there is some evidence to support the fact that cabinet members would assist plaintiff with the budget as it related to their particular departments (*see* Pl.'s Ex. 5 ("Thompson Dep.") at 14-15), the plaintiff does not point to any record evidence which supports his contention that the ultimate responsibility of administering the budget was shared among the cabinet administrators. Therefore, the role of the other cabinet administrators in connection with the budget cannot be said to be comparable to that of the plaintiff. And, to the extent that only plaintiff was held accountable for budgetary deficiencies, this fact provides no proof that he was treated less favorably than others.

Likewise, plaintiff's argument that the content of an independent audit report which was completed for the 2006-2007 school year somehow evidences comparable conduct between the cabinet administrators and the plaintiff is without merit. The mere fact that an audit identified deficiencies for which other cabinet administrators were responsible does not bring plaintiff's conduct any closer to that of the other cabinet administrators. Each deficiency identified in the

audit involved a unique set of facts and circumstances not comparable to the plaintiff. Since

there is no basis to find the cabinet administrators to be similarly situated, plaintiff cannot

establish his prima facie case of discrimination based on disparate treatment evidence.

While defendants would have this court end its analysis here, disparate treatment

evidence is not the only way a prima facie case of discrimination can be established for all of

plaintiff's claims. Although Plaintiff's failure in coming forward with similarly situated

individuals is fatal to his Equal Protection claim under Section 1983,[7] disparate treatment

evidence is just one "recognized method of raising an inference of discrimination for the

purposes of making out a prima facie case" under Title VII or the NYHRL. *Mandell v. Cnty. of

Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). In this case, plaintiff has asserted a discrimination

claim pursuant to NYHRL.[8] (Compl. ¶¶ 42-43.) Therefore, Boakye-Yaidom may come forward

with other evidence showing that his termination took place under circumstances giving rise to

---

[7] The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (internal quotation marks omitted). Therefore, to prevail on a Section 1983 Equal Protection claim, plaintiff must show that "(1) he was treated differently from similarly situated individuals; and (2) that such differential treatment was based on impermissible considerations such as race, [or] religion." *McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 424 (E.D.N.Y. 2009) (internal quotation marks omitted); *accord Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 194 (E.D.N.Y. 2009). The Court also notes that to maintain a Section 1983 or 1981 claim against the School District plaintiff was required to show that the challenged acts were performed pursuant to a municipal policy or custom. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). No such evidence, or even allegations are present here.

[8] While acknowledging that the Complaint does not contain a Title VII discrimination claim, plaintiff's counsel maintains, without citing to any authority, that such a claim "can be fairly read from the complaint." (Pl.'s Opp. at 25 n.5.) Considering the fact that plaintiff is represented by counsel, his pleading is not entitled to the liberal construction afforded to *pro se* litigants. Therefore, the Court declines to read into the Complaint a Title VII discrimination claim.

an inference of discrimination. With regard to plaintiff's discrimination claims based on race and skin color, he offers no such evidence.[9] Therefore, plaintiff has failed to make out a prima facie case of race and/or skin color discrimination and those claims must be dismissed.[10]

Narrowing the balance of this analysis to plaintiff's claims of employment discrimination on the basis of national origin, the Court finds that plaintiff has carried his *de minimus* burden in making out a prima facie case. Boakye-Yiadom argues that the comments made about his accent, including the Superintendent's remark "With your accent, who is going to make you a superintendent," coupled with the negative performance review he received from that same Superintendent not only lends support to an inference of discrimination but also evidences discriminatory animus for purposes of showing pretext. While the question of whether such facts would satisfy plaintiff's ultimate burden will be discussed in greater detail below, the Court concludes that the remark made by the Superintendent, when considered with other comments about plaintiff's accent contained in the record, is enough to satisfy plaintiff's minimal burden.[11] *See Chertkova*, 92 F.3d at 91 ("[C]ircumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a

_____

[9] Indeed, at the conclusion of the section of plaintiff's opposition brief titled "Plaintiff's Discrimination Claims," he requests that summary judgment be denied because "national origin discrimination was a motivating factor in the adverse employment actions suffered." (*See* Pl.'s Opp. at 30.) Plaintiff's lack of attention to his race and skin color claims is quite telling.

[10] Since plaintiff has failed to make out a prima facie case of race discrimination, his Section 1981 discrimination claim also fails as this section does not prohibit discrimination on the basis of national origin. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998); *Ghose*, 12 F. App'x at 55.

[11] It is noteworthy that defendants only addressed the comments about plaintiff's accent and the negative performance review in the context of pretext. (*See* Defs.' Mem. at 22-25; Defs.' Reply at 3-4.)

discriminatory animus.").

### C.    *Legitimate Non-Discriminatory Reason*

As plaintiff has met his burden of establishing a prima facie case of national origin discrimination, the burden shifts to defendants to offer a legitimate, non-discriminatory reason for the employment action at issue. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). To meet their burden, defendants "need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998).

Defendants maintain that there were a host of critical performance issues with plaintiff's employment which resulted in his termination. The particular issues were explicitly stated and well-documented in Laria's September 26, 2008 performance review of the plaintiff, which contained twenty-one separately numbered paragraphs of performance deficiencies. (Defs.' Ex. 75.) These deficiencies included: (1) submitting untimely and unacceptable documents with the SED; (2) authorizing payments and entering contracts without board approval; (3) implementing procedures that violated state law; (4) disregarding district policies and procedures; (5) failing to provide adequate oversight management; and (6) failing to comply with directives given by the Superintendent. (*Id.*)

Courts have routinely held that the failure to meet an employer's performance expectations as well as insubordinate behavior are legitimate, non-discriminatory reasons for termination. *See, e.g.*, *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) ("We have held generally that insubordination and conduct that disrupts the workplace are legitimate reasons for firing an

employee." (internal quotation marks omitted)); *Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 279 (S.D.N.Y. 2008) (finding poor performance to be a a legitimate non-discriminatory reason for termination); *Revere v. Bloomingdale's, Inc.*, 2006 WL 3314633, at *8 (E.D.N.Y. Nov. 14, 2006) ("[Defendant] has produced a detailed record of Plaintiff's performance deficiencies leading up to Plaintiff's discharge and has, therefore, met its burden."); *Jones v. Yonkers Public Sch.*, 326 F. Supp. 2d 536, 543-44 (S.D.N.Y. 2004) (concluding that misconduct, poor performance, and violation of employer's rules and procedures are legitimate, nondiscriminatory reasons for termination). As such, defendants have satisfied their burden of production.

### D.    Pretext

Under *McDonnell Douglas*, the burden then shifts back to plaintiff to demonstrate that the defendants' proffered explanation was pretextual. *See Reeves*, 530 U.S. at 143. A court must "examin[e] the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation marks omitted).

Plaintiff has raised issues of fact with regard to virtually all of the twenty-one performance deficiencies identified by the Laria in the September 26, 2008 evaluation. In fact, plaintiff submitted a memorandum to Laria on October 6, 2008, responding to the twenty-one performance areas identified as unsatisfactory. (*See* Defs.' Ex. 76.) Pointing to this memo and other evidence in the record, plaintiff maintains that the areas complained of by Laria involved tasks and actions which he: (1) had received approval and authorization for by the former Superintendent and/or the Board; (2) lacked the authority to act on; (3) did not have

responsibility over; or (4) completed. Plaintiff also maintains that he followed district procedure and was never insubordinate to any directive issued by any Superintendent. (*Id.*)

Further support of pretext can be drawn from the September 2008 performance review itself and the events leading up it. While the Court acknowledges that a change in an employee's performance evaluation cannot by itself raise an inference of pretext, especially when a new supervisor is appointed, *see Gambello v. Time Warner Communs., Inc.*, 186 F. Supp. 2d 209, 222 (E.D.N.Y. 2002), Boakye-Yiadom received this negative evaluation notwithstanding the fact that his prior reviews were exemplary and Laria was superintendent for just over two months. Moreover, the plaintiff was the only employee who received a quarterly evaluation from Laria. Finally, there is record evidence reflecting the fact that Laria, within fifteen days of serving as superintendent, expressed his view to the Board that plaintiff was not doing his job. (Pl.'s Ex. 6 ("Cross Dep.") at 12, 19, 22-23.)

However, merely concluding that questions of fact exist over the proffered reasons for plaintiff's termination is not be enough to defeat defendants' motion. *See Schnabel*, 232 F.3d at 88 ("A jury . . . could conclude that defendants' stated reasons for firing plaintiff were pretextual. Nevertheless, plaintiff has not demonstrated that the asserted pretextual reasons were intended to mask . . . discrimination."). Although a plaintiff need not show that his or her membership in a protected class "was the only or even the principal reason for the complained-of employment action," the plaintiff must show that such membership "played a motivating role in, or contributed to, the employer's decision." *Renz v. Grey Adver., Inc.*, 135 F.3d 217, 222 (2d Cir. 1997).

To support the argument that defendants had the requisite discriminatory animus behind his termination, plaintiff relies heavily on the comment made by Superintendent Laria. As previously mentioned, plaintiff states that Laria, sometime in August or September 2008, said the following to him: "With your accent, who is going to make you a superintendent?" (Defs.' Ex. 10 at 271.) "Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2008). On the other hand, "stray remarks, even if made by a decision maker, do not constitute sufficient evidence to make out a case of employment discrimination." *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998). Therefore, "[i]n determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Schreiber*, 324 F. Supp. 2d at 519.

The remark at issue was made by plaintiff's supervisor no more than two months before that same supervisor informed plaintiff that he was recommending to the Board that plaintiff's employment be terminated. In addition, a reasonable juror could find the remark discriminatory. Finally, while Laria's comment was made in response to plaintiff's aspiration of becoming a Superintendent, it could be inferred from the comment that Laria viewed plaintiff's accent as

negatively affecting his ability to perform his then current position as Assistant Superintendent. Although Laria's recollection of the conversation differs, such a disputed fact is one for the jury to decide. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment."); *Schreiber*, 324 F. Supp. 2d at 522-23 ("[T]he weight accorded to such remarks is a question for a jury to decide."). Since the evidence must be construed in a light most favorable to the plaintiff, the Court finds that Laria's comment provides some evidence of discriminatory motivation regarding plaintiff's national origin. *See Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007) ("The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.").

Even had the Court determined that this comment, standing alone, was a stray remark, "that stray comment may 'bear a more ominous significance' when considered within the totality of all the evidence." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)). In addition to the circumstances surrounding the September 2008 performance review, the record also contains evidence from Board member Betty Cross that plaintiff's accent was discussed at Board meetings at the time Laria was Superintendent, and that the Board members – who were the ultimate decision-maker in plaintiff's employment – would voice their opinion that the plaintiff was different from them. (Cross Dep. at 17-18.)

While the evidence is by no means overwhelming, after considering the evidence in the totality, and resolving all conflicts in the evidence and drawing all inferences in plaintiff's favor, a reasonable jury could find that plaintiff's national origin was a factor in his termination. Accordingly, summary judgment regarding plaintiff's NYHRL claim on the basis of national origin is denied. Summary judgment is granted as to all other discrimination claims asserted by plaintiff, including those claims brought under Sections 1981 and 1983.

### III.    *Hostile Work Environment*

#### A.    *Legal Standard*

In order to establish a hostile work environment claim, a plaintiff must prove: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and brackets omitted). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)); *see also Dermoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.").

"Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret*, 451 F.3d at 149 (quoting *Patterson*, 375 F.3d at 227). However, "[t]here is no fixed number of incidents that a plaintiff must endure to establish a hostile work environment," and instead, courts are to "view the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Alfano*, 294 F.3d at 379. What is necessary is that plaintiff establish a link between the actions by defendants and plaintiff's membership in a protected class. *Id*. at 374; *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

### B.     *Prima Facie Case*

With regard to plaintiff's hostile work environment claims, defendants contend that plaintiff has failed to produce sufficient evidence to support such claims. Plaintiff, however, specifically identifies eleven separate incidents that he contends, given the totality of the circumstances, would permit a reasonable juror to conclude that he was subjected to a hostile work environment because of his national origin. According to Boakye-Yiadom, these incidents included: (1) Wright calling plaintiff an "African Nigger;" (2) Laria's remark about plaintiff's accent; (3) Stubbolo mocking plaintiff's accent with another employee; (4) Jackson criticizing plaintiff for his accent and for being a foreigner; (5) Valentin commenting on not wanting to vote for President Obama because he is African; (6) Valentin reporting false information about the budget to the Board; (7) Planz, at the direction of a Board member, repeatedly requesting and investigating proof of plaintiff's citizenship; (8) Planz throwing a stack of papers at the plaintiff; (9) the placement of a Fiscal Management Oversight Advisor to oversee plaintiff's work; (10) Stubbolo conspiring with others to "get rid" of plaintiff  "no matter the cost;" and

(11) individuals monitoring plaintiff's office.  The Court notes that from the litany of allegedly

harassing conduct plaintiff relies on to establish the existence of a hostile work environment,

only the incident involving Planz investigating plaintiff's citizenship and the comments made by

Wright, Laria, Stubbolo and Jackson implicate plaintiff's national origin.  Therefore, these

incidents will be the Court's primary focus.

   As an initial matter, the record does not support plaintiff's characterization of the

comments made by Valentine regarding President Obama and Stubbolo purportedly stating that

he and others were going to "get rid" of plaintiff "no matter the cost."  Having not heard

Valentine's remark himself, plaintiff claims another co-worker, Mark Francois, told him about it.

Putting aside the admissibility issues surrounding such testimony, the actual comment Francois

heard from Valentine was the following: "I am not going to vote for Obama because I don't like

him."  Francois Aff. ¶ 15.  Similarly, Stubbolo's comment was not heard by plaintiff, but rather

Assistant Superintendent Sally Thompson.  Contrary to plaintiff's representation, Thompson

testified that Stubbolo did not state that Boakye-Yiadom was going to be terminated or that he

wanted to terminate him, let alone based on his national origin or race.  (Pl.'s Ex. 5 ("Thompson

Dep.") at 43-47.)  Therefore, these incidents offer no support for plaintiff's hostile work

environment claims.

   In addition, the comments by Jackson, who was not an employee of the School District,

and by Wright,[12] who was merely a co-worker without supervisory authority over the plaintiff,

_____

   [12]  To the extent plaintiff is arguing that Wright's "African Nigger" remark is enough to
create a hostile work environment on the basis of race, he would be mistaken.  While certainly
offensive, the single use of the word "nigger" or any other racial epithet is not enough to
establish a hostile work environment claim.  *Compare Schwapp v. Town of Avon*, 118 F.3d 106,
110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work

cannot be imputed on the defendants.  *See Mack*, 326 F.3d at 123; *see also Hill v. Rayboy-*

*Brauestein*, 467 F. Supp. 2d 336, 359 (S.D.N.Y. 2006) ("Plaintiff must also show there is some

reason to impute the discriminatory conduct of the employees that created the hostile work

environment to the employer.  Employers are not generally liable for the harassing behavior of a

plaintiff's co-workers; to find an employer liable for a hostile work environment claim, the

harassment must generally come from a supervisor with immediate or successively higher

authority over a Plaintiff." (citation omitted)).  As such, these comments do not provide any

evidence in favor of finding a hostile work environment.

    With regard to the comments by Laria and Stubbolo regarding plaintiff's accent, there is

no indication that they occurred on more than one occasion.  Likewise, the record establishes that

the incident involving Planz requesting proof of citizenship from the plaintiff only occurred once.

The Court finds that these three isolated incidents which can be attributed to the defendants

during plaintiff's two and a half year employment is not severe or pervasive enough to alter the

conditions of plaintiff's employment  to constitute an objectively hostile work environment.  *See*

*Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989) ("The incidents must be more

than episodic; they must be sufficiently continuous and concerted in order to be deemed

pervasive."); *Payton v. City Univ. of N.Y.*, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) ("Conduct

that is merely offensive, unprofessional, or childish cannot support a hostile work environment

---

environment, there must be more than a few isolated incidents of racial enmity, meaning that
instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."
(internal quotation marks and citations omitted)); *and Albert-Roberts v. GGG Constr., LLC*, 2012
WL 3560814, at *6 (W.D.N.Y. Aug. 16, 2012) (concluding that the one instance of the use of the
word "nigger" did not establish a prima facie case of a hostile work environment.) *with Cruz v.*
*Coach*, 202 F.3d 560, 571 (2d Cir. 2000) (finding sufficient evidence for a hostile work
environment claim where supervisor would *repeatedly and constantly* use racial epithets).

claim." (internal quotation marks omitted)).

As for the remaining incidents identified by the plaintiff, they are all facially neutral. While facially neutral circumstances may be considered as part of the totality of circumstances, a plaintiff must provide some basis from which a jury could rationally infer that these national origin-neutral incidents were discriminatory. *See Alfano*, 294 F.3d at 378; *Raniola v. Bratton*, 243 F.3d 610, 621-22 (2d Cir. 2001). Having failed to proffer any evidence – other than his own speculation – that would establish that the remaining facially-neutral actions had any national origin-related element, these incidents do not save plaintiff's hostile work environment claims. As the totality of the circumstances do not support the conclusion that the workplace was so objectionable as to negatively alter the terms and conditions of a reasonable person's employment, summary judgment is granted with respect to plaintiff's hostile work environment claims.

## IV.    *Retaliation*

### A.    *Legal Standard*

Plaintiff's Title VII retaliation claim is also analyzed using the *McDonnell Douglas* burden-shifting framework. *See Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (citing *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997)). "'To make out a prima facie case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action.'" *Id.* (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

### B. Prima Facie Case

#### 1. Protected Activity Known by School District

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566. Action taken in opposition to unlawful employment practices need not rise to the level of a formal complaint; such actions as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges" are considered to be protected activity. *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *see also Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992) (concluding that the internal complaint sent to company management protesting harassing actions of supervisor was protected activity). For a plaintiff to show that he was engaged in protected activity, he or she need only "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

Plaintiff submits that in addition to filing the EEOC Charge on September 26, 2008, he engaged in other protected activity, including: (1) sending a July 15, 2008 memo to Laria; and (2) sending a September 4, 2008 memo to the Board.[13] Each of these actions will be addressed

---

[13] Boakye-Yiadom also maintains that his September 24, 2008 e-mail to Stubbolo and his October 6, 2008 memo in response to his negative performance evaluation each constitute protected activity. The Court finds it unnecessary to determine whether these actions are considered protected activity based on the presence of other protected activity, as discussed *infra*.

separately.[14]

a.     July 15, 2008 Memo

Boakye-Yiadom submitted a memorandum to the personnel department on July 15, 2008 ("July 15 Memo") which summarized a meeting that occurred on July 14 between himself, plaintiff's assistant, and Laria.  According to the memo, "the meeting turned out to be communication of verbal threats to terminate me by Dr. Laria." (Defs.' Ex. 33.)  In particular, plaintiff claims that Laria said he would "throw me under the bus," which meant he would get plaintiff fired and that Laria had no confidence in the plaintiff's performance.  (*Id.*)  Boakye-Yiadom also documented an exchange he had with an ex-member of the Board where he was told that certain Board members stated that they also did not have confidence in his work.  (*Id.*) In the last paragraph of the memo, plaintiff stated that it was his belief that "these activities of Dr. Laria and members of the Board of Education about my employment are illegal, discriminatory, and which have created a hostile work environment for me to work in the District." (*Id.*)

---

[14] Defendants request that the Court limit its analysis of protected activity to the filing of the EEOC Charge.  To support this request, defendants argue that to consider other protected activity referenced in plaintiff's opposition would equate to granting plaintiff the ability to untimely amend his Complaint to state a new basis for his retaliation claim.  The Court is not persuaded by this argument.  While plaintiff's Title VII retaliation claim specifically references retaliation premised on having filed a Charge with the EEOC (*see* Compl. ¶ 41), the preceding paragraphs more broadly allege retaliation for plaintiff "opposing discrimination in the workplace." (Compl. ¶¶ 32-33.)  Such opposition included the July 15, 2008 memo, which is specifically referenced in the Complaint.  (*Id.* ¶ 17.)  To the extent that the other actions of plaintiff were not included in the Complaint, Defendants have not provided any authority to support the position that plaintiff needed to amend the Complaint to include each and every fact that would be relied on in opposition to a summary judgment motion.

Defendants contend that plaintiff lacked a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII since the comments and actions complained about in the July 15 Memo had nothing to do with race, color, or national origin. While plaintiff may have actually believed in good faith that the complained of conduct was illegal,[15] "[m]ere subjective good faith belief is insufficient, the belief must be reasonable and characterized by *objective* good faith." *Sullivan-Weaver v. New York Power Auth.*, 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000) (emphasis in original). In other words, "for an employee's complaints to be 'protected activity' they must relate to an alleged violation of Title VII, i.e., the complaints must relate to[, *inter alia,*] race or gender." *Gourdine v. Cabrini Med. Ctr.*, 307 F. Supp. 2d 587, 598 (S.D.N.Y. 2004), *aff'd in part and vac'd in part and remanded on other grounds*, 128 F. App'x 780 (2d Cir. 2005); *see also Manoharan*, 842 F.2d at 593.

With regard to the July 15 Memo, the complaints contained therein all center around threats by Laria and certain Board members to terminate plaintiff based on a lack of confidence in his work. At no point in the July 15 Memo does plaintiff express any concern over race or national origin-based discrimination or any other characteristic that would implicate a protected class under Title VII. Such threats, therefore, cannot be considered a violation of Title VII. *See Manoharan*, 842 F.2d at 594 (finding no protected activity where plaintiff's objections "neither pointed out discrimination against particular individuals nor discriminatory practices by [defendant]."). Furthermore, "[a] complaint is not protected simply because it alleges

---

[15] Although defendants challenge plaintiff's own subjective good faith belief, the Courts sees nothing in the record for it to determine, as a matter of law, that plaintiff lacked such a subjective belief. At best, it raises questions of fact and credibility issues that are not for this Court to decide.

discrimination." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 2012 WL

3241402, at *13 (E.D.N.Y. Aug. 3, 2012). Indeed, the fact that the July 15 Memo contained the

words "illegal," and "discriminatory" are not enough to constitute protected activity. *See Kelly*,

2012 WL 3241402, at *13 ("The fact that the Plaintiff alleges that she used the words

'discrimination' and 'harassment' in her complaints is 'not enough' to state a claim of

retaliation."); *Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382,

395 (W.D.N.Y. 2010) ("[T]he mere fact that plaintiff used the term 'hostile environment' in her

email to her supervisor is not enough."). Since no rational juror would find that plaintiff had a

reasonable belief that he was opposing an employment practice made unlawful by Title VII when

he submitted his July 15 Memo, that memo cannot be considered protected activity.[16]

b.      September 4, 2008 Memo

Plaintiff also alleges that he submitted a memorandum to the members of the Board on

September 4, 2008 ("September 4 Memo"). This memo indicates, among other things, that "three

men were going to get rid of me by recommending to the Board to terminate my employment with

Hempstead Public Schools, no matter what it takes. As such, I have been: harassed, subjected to

racist treatment and discrimination . . . ." (Pl.'s Ex. 8.) The memo continues that Laria

"ricicul[ed] my accent, and discriminat[ed] against me by treating me differently." (*Id.*)

---

[16] For the same reasons, Boakye-Yaidom has not shown that defendants were made
aware by reading his July 15 Memo that he was complaining about prohibited discrimination.
*See Galdieri-Ambrosini*, 136 F.3d at 292 ("[I]mplicit in the requirement that the employer have
been aware of the protected activity is the requirement that it understood, or could reasonably
have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.");
*Inganamorte v. Cablevision Sys. Corp.*, 2006 WL 2711604, at *16 (E.D.N.Y. Sept. 21, 2006)
(finding that the employer could have not been aware of plaintiff's complaint concerning gender
discrimination since it failed to "state or imply that gender ha[d] anything to do with her
objections").

Unlike the July 15 Memo, the September 4 Memo specifically stated that the complained of conduct subjected plaintiff to "racist treatment and discrimination." (Pl.'s Ex. 8.) Moreover, the September 4 Memo provides facts and occurrences sufficient to place the defendants on notice that plaintiff's opposition was directed at conduct prohibited by Title VII. (*Id.*) Whether or not the complained of conduct was actually prohibited by Title VII is not controlling. *See Manoharan*, 842 F.2d at 593. Therefore, a reasonable jury could find the September 4 Memo was protected activity. *See Osorio v. Source Enters., Inc.*, 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007) (finding protected activity where plaintiff "clearly identified the discrimination she believed she suffered").

However, merely showing that an action is considered protected activity is not enough; a plaintiff must also show that the employer was aware of the protected activity. In this case, there is no evidence in the record establishing that the September 4 Memo was ever submitted to or received by the School District. The only mention of the September 4 Memo is found in plaintiff's affidavit which states that the September 4 Memo "is a true and accurate copy." (Boakye-Yiadom Aff. ¶ 45.) There is no sworn statement of the plaintiff which indicates that the September 4 Memo was hand-delivered, mailed or otherwise submitted to the Board. Nor is there any indication on the September 4 Memo that the Board received it. (Pl.'s Ex. 8.) As such, the September 4 Memo cannot serve as a basis for liability on plaintiff's retaliation claim.

### c.     EEOC Charge

As for the Charge of Discrimination which was filed with the EEOC on September 26, 2008, defendants contend that plaintiff lacked a good faith, reasonable belief that he was opposing an unlawful employment practice since he acknowledged that he filed the EEOC Charge because

he was told that he was going to be terminated.  This argument fails for two reasons.  First, defendants misconstrue plaintiff's testimony.  At no point does plaintiff acknowledge that he filed the EEOC Charge because he was told he was going to be fired.  Instead, he merely indicated that, to the best of his recollection, it was a "factor" in his decision to file an EEOC Charge.  (Boakye-Yiadom Dep. II at 135.)  Second, the Court has already determined that the submitted evidence, at the very least, creates an issue of fact as to whether unlawful employment practices occurred at the time the EEOC Charge was filed.  As such, the Court finds no basis to conclude that the filing of the EEOC Charge was not protected activity.

    2.    *Adverse Employment Action*

    What qualifies as an adverse employment action in the context of a claim of retaliation is much broader than a claim of discrimination.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (concluding that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law." (internal citations omitted)).  The applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *White*, 548 U.S. at 68 (internal quotation marks omitted).

Here, plaintiff contends that not only were his termination and reassignment to administrative home duty adverse employment actions, but so were Laria's termination recommendation to the Board and the negative performance review as they would dissuade a reasonable person from making a charge of discrimination. In addition to not being disputed by defendants, there is support for plaintiff's position. *See Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011) (considering, as an adverse employment action in a retaliation action, defendant's decision to recommend the termination of plaintiff's probationary employment); *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (concluding that in retaliation claims, "[l]esser actions such as negative employment evaluation letters may also be considered adverse."). Thus, a reasonable jury could find that all four actions were adverse employment actions for retaliation purposes.

### 3. Causal Connection

Proof of causation can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Treglia*, 313 F.3d at 720 ("[A] close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action can be sufficient to establish causation."). Defendants argue that plaintiff has failed to prove the necessary causal connection between the protected activity and the adverse employment actions. Although plaintiff maintains that he has established causation both directly and indirectly, the Court need only focus on temporal proximity for it to conclude that plaintiff has established a prima facie case of retaliation.

Defendants claim that there is no causal connection between the Charge of Discrimination, which was filed with the EEOC on September 26, 2008, and plaintiff's September 26, 2008 performance review since Laria had completed a draft of the review on September 23, 2008. This argument, however, does not take into account the other adverse employment actions which plaintiff was subjected to. For example, Laria's termination recommendation and decision to put plaintiff on administrate reassignment – both occurring on October 17, 2008 – are considered close enough in time to establish a causal connection. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (finding less than two months between the protected activity and adverse action adequate to establish a causal connection); *see also Gormon-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (concluding that there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a casual relationship") (internal quotation marks omitted); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003) ("[T]he interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months."). In any case, the elapsed time between plaintiff's EEOC Charge and his November 20, 2008 termination was within two months. *See Antonmarchi v. Consol. Edison Co.*, 2008 WL 4444609, at *13 (S.D.N.Y. Sept. 29, 2008) ("The Second Circuit has held a temporal proximity of less than two months between complaint and adverse action sufficient to support an inference of retaliation.").

Notwithstanding the temporal proximity between the protected activity and the adverse employment actions, defendants attempt to align this case with others that have declined to find an inference of retaliation where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity." *Slattery*, 248 F.3d at 95; *accord Bernard v. JP Morgan Chase Bank NA*, 408 F. App'x 465, 469 (2d Cir. 2011). After considering the evidence, including the specific letters referenced by defendants, the Court is not persuaded that adverse job actions began before plaintiff's protected activity started to occur. As such, a reasonable jury could find that plaintiff has established the required causal link for a prima facie case of retaliation.

### C.    Pretext

For the reasons previously articulated in the discrimination analysis, the Court finds that the defendants satisfied their burden of coming forward with legitimate non-discriminatory reason for the adverse employment actions taken against the plaintiff, namely his poor performance. Therefore, Boakye-Yiadom  must come forward with evidence to show that the defendants' reasons were not credible and retaliation contributed to the adverse actions.

Again, the Court notes that the plaintiff has created issues of fact regarding the veracity behind the performance issues raised by Laria in his performance evaluation. In addition, the fact that plaintiff was the only employee subjected to a quarterly review by Laria – the same individual accused of retaliating against him– allows a reasonable juror to question the motives behind the review. Even if Laria was unaware of the fact that plaintiff filed an EEOC Charge at the time the performance review was already drafted, retaliation can be inferred from the fact that Laria decided to recommend plaintiff's termination just a few weeks after the performance review was

issued.  In fact, nowhere in the performance review was there any mention that plaintiff's job was at risk; the performance review merely indicated that plaintiff was performing at an unsatisfactory level.  However, after the performance review was issued, Laria would have learned about plaintiff's EEOC Charge.  Based on present record, after crediting all reasonable factual inferences in plaintiff's favor, a reasonable jury could find that defendants' reasons for the adverse employment actions were a pretext for retaliation.  Accordingly, summary judgment on plaintiff's Title VII retaliation claim is denied.

## V.      *Conspiracy*

With regard to plaintiff's conspiracy claim – which is premised on the contention that Stubbolo conspired with others in the District to have him terminated – the defendants allege that plaintiff cannot offer evidence that would establish such a claim and, even if he had, such a claim would be barred by the intra-corporate conspiracy doctrine.  Since plaintiff has not come forward with sufficient admissible evidence to establish a conspiracy claim, the Court need not address whether such a claim is barred by the intra-corporate conspiracy doctrine.

To establish a civil rights conspiracy under Section 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993).  The conspirators' actions must also be motivated by some class-based, discriminatory animus.  *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

Boakye-Yiadom maintains that there exists an issue of fact as to whether Stubbolo conspired with other individuals within the District to have him terminated based on the fact that there was a discussion in a coffee shop between Stubbolo and others about how to get rid of him. However, the evidence plaintiff relies on to support the fact that this discussion occurred is from individuals who were not present at the coffee shop, and only learned about the discussion from another employee whom Stubbolo allegedly told. Such evidence is inadmissible hearsay and cannot be considered by the Court.[17] *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Even if the Court were to consider such evidence, there are other shortcomings. Plaintiff fails to show that the conspirators took action in furtherance of the conspiracy to have him terminated. In fact, there is no evidence indicating that Stubbolo or any other conspirator were behind any of the purported adverse actions plaintiff was subjected to. Moreover, none of the evidence relied upon by plaintiff indicates that the conspirators' actions were motived by some class-based, discriminatory animus. *See Thomas*, 165 F.3d at 146.

Finally, to the extent plaintiff relies on Cross' testimony regarding what Stubbolo told her, she merely indicated that Stubbolo told her that "he wants to get rid of Kwame." (Cross. Dep. at 29.) Such testimony does not evidence any explicit agreement or tacit understanding between Stubbolo and another individual to support a conspiracy claim. *See Hardin v. Meridien Foods*, 2001 WL 1150344, at *7 (S.D.N.Y. Sept. 27, 2001) ("Plaintiff has adduced no evidence in the record that [Defendants] entered into an agreement, express or tacit, to deprive him of his

---

[17] It is also worth noting that the employee who Stubbolo purportedly told about the coffee shop discussion, Sally Thompson, denies ever telling plaintiff, or anyone else, that Stubbolo told her that he and others were going to get plaintiff terminated. (Defs.' Ex. 99 ("Thompson Dep.") at 44-47.)

constitutional rights.").  As there is insufficient evidence to support a conspiracy claim, summary judgment on this claim is warranted.

## VI.    *Individual Defendants*

Finally, the defendants argue that plaintiff's Section 1981 and 1983 claims against defendants Wright, Valentin, Planz and Stubbolo should be dismissed on the basis that these individuals lacked the supervisory authority needed to be found individually liable.  The Court need not make such a determination as it has already concluded that plaintiff's Section 1981 and 1983 claims fail as a matter of law.  However, since NYHRL Section 296 also provides for individual liability, these individuals remain as defendants in the action.[18]

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied as to (1) plaintiff's national origin discrimination claim pursuant to NYHRL Section 296, and (2) plaintiff's retaliation claim pursuant to Title VII.  The defendants' motion for summary judgment is granted as to all other claims.

The parties are directed to contact the Court within thirty days of this Order to schedule a final pretrial conference.

---

[18]  Defendants do not argue for the dismissal of plaintiff's NYHRL claim against the individual defendants.  While plaintiff withdrew his Section 1981 and 1983 claims against defendants Wright, Valentin and Planz, he did not withdraw his NYHRL claim against them.  Since NYHRL Section 296(6) allows for individual liability against non-supervisory personnel who participates in the conduct giving rise to a discrimination claim, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 371 (E.D.N.Y. 2012), the Court is not in a position to dismiss any of the defendants based on the arguments presently before it.

**SO ORDERED.**

Dated: Central Islip, New York
        November 19, 2012

_____/s/_____
Denis R. Hurley
United States District Judge