UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KWAME BOAKYE-YIADOM,

                                    Plaintiff,                    **MEMORANDUM AND ORDER**

          -against-                                               09 CV 622  (DRH) (ARL)

JOSEPH A. LARIA, individually, CHARLES
RENFROE, individually, JOANN SIMMONS,
individually, GLADYS RIVERA, individually,
SHARLEEN RESHARD, individually,
PATRICIA W. WRIGHT, individually,
CHARLES PLANZ, individually, KENNETH
STUBBOLO, individually, LUZ VALENTINE,
individually, and HEMPSTEAD UNION FREE
SCHOOL DISTRICT,

                                    Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**LEEDS BROWN LAW, P.C.**
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, NY 11514
By:     Rick Ostrove, Esq.
          Thomas Ricotta, Esq.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Attorneys for Defendants
77 Water Street, Suite 2100
New York, NY 10005
By:     Peter J. Biging, Esq.
          Joanne J. Romero, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Kwame Boakye-Yiadom ("plaintiff" or "Boakye-Yiadom") commenced this action against defendants Hempstead Union Free School District (the "School District"), Joseph Laria, Charles Renfroe, Joann Simmons, Gladys Rivera, Sharleen Reshard, Patricia Wright, Charles Planz, Luz Valentine, and Kenneth Stubbolo (collectively, the "defendants"), alleging that they violated his constitutional rights pursuant to 42 U.S.C. §§ 1981, 1983, and 1985(3), as well as his rights under the New York State Human Rights Law ("NYHRL") pursuant to N.Y. EXEC. LAW § 296, when they discriminated against him and subjected him to a hostile work environment due to his race, skin color, and national origin. Plaintiff also alleges that the School District violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*. when it retaliated against him for engaging in protected activity.

On January 31, 2012, defendants moved for summary judgment. By Memorandum and Order dated November 19, 2012 ("November 2012 Order"), the Court granted in part and denied in part defendants' motion. Specifically, the Court granted defendants summary judgment on all claims with the exception of (1) plaintiff's national origin discrimination claim pursuant to NYHRL Section 296, and (2) plaintiff's retaliation claim pursuant to Title VII. *Boakye-Yiadom v. Laria*, 2012 WL 5866186, at *16 (E.D.N.Y. Nov. 19, 2012). Presently before the Court is defendants' motion for reconsideration of the November 2012 Order to the extent it partially denied defendants' motion for summary judgment. For the reasons that follow, defendants' motion is denied.

## BACKGROUND

The underlying facts of this action are set forth in the November 2012 Order, familiarity with which is assumed. Thus, only those facts necessary for the disposition of defendants' motion for reconsideration will be discussed *infra*.

Defendants seek reconsideration of the November 2012 Order on multiple grounds. First, defendants argue that in denying their motion for summary judgment as to plaintiff's NYHRL claim for national origin discrimination, "the court improperly allowed a single alleged criticism of plaintiff's accent to provide the requisite evidence to meet plaintiff's burden of establishing an inference of bias, and improperly considered circumstances concerning his September 2008 evaluation and inadmissible hearsay evidence in connection therewith." (Defs.' Recons. Mem. at 4.) Second, defendants argue that even if the Court permits plaintiff's NYHRL claim to go forward, this claim should have been dismissed against the co-worker defendants.[1] Third, defendants claim that the Court's denial of their motion for summary judgment regarding plaintiff's Title VII retaliation claim "was based solely on the Court's erroneous decision with regard to the national HRL origin discrimination claim." (*Id.* at 10.)

## DISCUSSION

### I.     Legal Standard

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data

---

[1] The co-worker defendants include Planz, Stubbolo, Wright, and Valentine.

that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003); *see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (concluding that a motion for reconsideration under Local Civil Rule 6.3 "provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice"). The moving party, however, may neither repeat "arguments already briefed, considered and decided," nor "advance new facts, issues or arguments not previously presented." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *accord Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000); *see also Medoy v. Warnaco Employees Long Term Disability Ins. Plan*, 2006 WL 355137 (E.D.N.Y. Feb. 14, 2006) ("The standard for reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.").

## II.     *Application*

As previously indicated, defendants seek reconsideration of the Court's November 2012 Order which permitted two claims to proceed to trial, namely plaintiff's national origin discrimination claim pursuant to NYHRL Section 296, and plaintiff's retaliation claim pursuant to Title VII. While both claims and the arguments associated with each will be addressed below, defendants fail to cite any controlling case law or part of the record that the Court overlooked. Rather, defendants' motion largely restates arguments set forth in the underlying motion papers that were fully considered and addressed in the November 2012 Order.

*A.*     *National Origin Discrimination Claim*

Urging the Court to reconsider its denial of defendants' motion for summary judgment on

plaintiff's national origin claim, defendants argue that "the Court erred in making this

determination because (1) it overlooked controlling case law providing that an inference of

national origin discrimination could not be drawn based solely upon Dr. Laria's alleged criticism

of Boakye-Yiadom's accent; (2) it ignored the fact that there were numerous uncontested

performance issues identified in the September 2008 performance evaluation, making clear that

there were indisputably legitimate non-discriminatory reasons for the adverse employment

actions complained of; and (3) it relied upon inadmissible hearsay evidence." (Defs.' Recons.

Mem. at 5.)  Defendants also contend that, at the least, the Court erred in not dismissing the

national origin claim against the co-worker defendants.  All of these contentions lack merit.

First, none of the cases cited by defendants stand for the proposition that an inference of

national origin discrimination may not be based upon a defendant's criticism of a plaintiff's

accent regardless of the content of the criticism and attendant circumstances.  For example, two

cases cited by defendants merely conclude that a defendant stating that he or she could not

understand a plaintiff's accent is insufficient to show an inference of national origin

discrimination.  *See Ghose v. Century 21, Inc.*, 12 F. App'x 52, 54-55 (2d Cir. 2001) (concluding

that plaintiff failed to show circumstances that give rise to an inference of discrimination where

"the evidence on which he relies indicates only that his coworkers and supervisors asked him to

repeat himself because they could not understand him"); *Ponniah Das v. Our Lady of Mercy*

*Med. Cntr.*, 2002 WL 826877, at *8 (S.D.N.Y. Apr. 30, 2002), *aff'd* 56 F. App'x 12 (2d Cir.

2003) ("That [plaintiff's supervisor] said that she could not understand [plaintiff's] accent does

not support a claim of discrimination."). Although defendant Laria claims that he simply told

Boakye-Yiadom that he could not understand him during the August or September 2008

conversation at issue, the Court noted in the November 2012 Order that his recollection differed

markedly from the plaintiff and such a disputed fact is one for the jury to decide.[2] *Boakye-*

*Yiadom*, 2012 WL 5866186, at *8.

Second, the argument that the Court incorrectly assigned no weight to the purportedly

uncontested performance deficiencies that prompted plaintiff's performance is unpersuasive.

Under the burden shifting test articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792,

93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), if the plaintiff establishes a prima facie case, the burden

shifts to the defendant to offer a legitimate nondiscriminatory reason for the employment

decision. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). If such a showing is

made, the burden returns to the plaintiff to show that the reasons proffered by the defendant were

not its true reasons but were a pretext for actual discrimination. *Id.* at 492. Even if, contrary to

the fact, there were uncontested performance issues identified by Laria in the September 2008

performance evaluation, such a finding would not be dispositive of defendants' motion for

summary judgment. In essence, what is significant is whether these purported performance

---

[2] The other cited cases similarly do not support defendants' conclusion that comments about a person's accent can never support an inference of national origin discrimination. *See Manessis v. N.Y. City Dep't of Transp.*, 2003 WL 289969, at *8 (S.D.N.Y. Feb. 10, 2003) (finding that although comments from a supervisor regarding plaintiff "speaking . . . with an accent" is insufficient as it is devoid of discriminatory bias, a comment "probative of discriminatory intent, *i.e.*, a supervisor saying that he does not like an employee's accent, []reflect[s] some bias"); *Rodriguez v. Am. Friends of Hebrew Univ., Inc.*, 2000 WL 1877061, at *5 (S.D.N.Y. Dec. 26, 2000) (concluding that occasional mimicking of plaintiff's accent in the context of the full record did not evidence an inference of discrimination).

deficiencies were the sole reason for plaintiff's termination or whether a motivating factor behind his termination is traceable to proscribed discrimination.

In the November 2012 Order, the Court concluded that "[w]hile the evidence is by no means overwhelming, after considering the evidence in the totality, and resolving all conflicts in the evidence and drawing all inferences in plaintiff's favor, a reasonable juror could find that plaintiff's national origin was a factor in his termination." *Boakye-Yiadom*, 2012 WL 5866186, at *8. This determination was not based solely on plaintiff raising issues of fact with regard to virtually all of the purported performance deficiencies identified in the September 2008 evaluation, but also the fact that: (1) plaintiff received the negative evaluation from Laria notwithstanding the fact that plaintiff's prior reviews were exemplary and Laria was superintendent for just over two months; (2) plaintiff was the only employee who received a quarterly evaluation; (3) Laria, within fifteen days of serving as superintendent, expressed his view to the Board that plaintiff was not doing his job; (4) Laria commented to plaintiff that "[w]ith your accent, who is going to make you a superintendent;" and (5) plaintiff's accent was discussed at Board meetings. Although defendants cite to cases indicating that certain of these facts, in isolation, cannot satisfy pretext,[3] it was the totality of the circumstances which justified the denial of defendants' motion. The defendants' attempt to compartmentalize the evidence and have each piece, standing alone, declared insufficient, is unavailing.

---

[3] For example, in *Fleming v. Maxmara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010), the Second Circuit concluded that plaintiff's "disagreement with defendants over whether her behavior was inappropriate does not show that their stated reasons for terminating her were not their true reasons." Moreover, this District has held that "[t]he mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus, nor are [plaintiff's] complaints of undue scrutiny." *Missick v. City of New York*, 707 F. Supp. 2d 336, 350 (E.D.N.Y. 2010) (internal citations omitted).

Third, the Court disagrees that it improperly considered and gave weight to certain testimony of Board member Betty Cross regarding comments at board meetings about plaintiff's accent. When questioned whether "anybody in the District or anyone on the Board comment[ed] about [plainitff's] accent to you," Betty Cross responded that people in the Board room would occasionally voice their opinion that plaintiff was "different from us." (Cross Dep. at 17.) To the extent that defendants claim that such testimony should not have been considered because it is hearsay, defendants did not raise any hearsay objection to this evidence in their underlying motion papers and therefore waived such an evidentiary challenge for purposes of summary judgment. *See* Fed. R. Evid. 103(a)(1). And, in any event, the Court does not find the testimony at issue to be hearsay evidence since plaintiff is not offering Cross' testimony to prove that plaintiff was in fact different than the members of the Board. Rather, plaintiff is presenting this testimony merely as evidence that such an utterance was made. *See* Fed. R. Evid. 801(c). The Court also finds unavailing the claim that the Court gave undue weight to this testimony. While Cross' initial testimony regarding who made the comments were somewhat vague, she clarified that the comments occurred during executive sessions where only the Board and cabinet were present.[4] (Cross Dep. at 18.)

Finally, no error was committed by allowing plaintiff's NYHRL claim to go forward against the co-worker defendants since no argument was presented on summary judgment for the dismissal of this claim. *See Boakye-Yiadom*, 2012 WL 5866186, at *16 n.18. Despite submitting briefs totaling 56 pages and dedicating a section of their briefs specifically to the issue

_____

[4] Even assuming, *arguendo*, that it was improper to consider Cross' deposition, such testimony was not the only evidence considered in denying defendants' motion for summary judgment.

of dismissing other claims asserted against the co-worker defendants in their individual capacity, defendants neither referenced individual liability under NYHRL Section 296 nor presented any legal argument in favor of its dismissal. Recognizing this failure, defendants now claim that the Court overlooked the following assertion contained in their memorandum in support of summary judgment: "it can be seen that Boakye-Yiadom cannot meet his burden of proof in establishing any of his claims herein." (Defs.' Recons. Mem. at 9.) The attempt by defendants to extrapolate from this single sentence a cogent argument for dismissing plaintiff's NYHRL Section 296 claims against the co-worker defendants is baseless. In fact, this contention was asserted by defendants in the context of plaintiff's purported failure in satisfying his burden pursuant to the burden under *McDonnell Douglas*, not in the context of individual liability. What remains, therefore, is an argument raised by defendants for the first time on reconsideration. Because a motion for reconsideration is not an opportunity for defendants to present new arguments to the Court, this contention also fails.[5]

Having failed to show that the Court overlooked controlling law or facts which resulted in a clear error or manifest injustice, defendants' motion for reconsideration with respect to plaintiff's NYHRL national origin discrimination claim is denied.

---

[5] It is the Court's expectation, however, that those named defendants who lacked the supervisory authority and did not participate in the conduct giving rise to plaintiff's remaining discrimination claim will be voluntarily dismissed prior to trial. If not, the Court will entertain an *in limine* motion by defendants once this case is scheduled for trial to accomplish that result.

### B.      Retaliation Claim

In connection with plaintiff's Title VII retaliation claim,[6] defendants argue that the denial of their summary judgment on this claim was "based solely on the Court's erroneous decision with regard to the [NYHRL national origin] discrimination claim."  (Defs.' Recons. Mem. at 10.) Specifically, defendants assert that "if the Court were to, upon reconsideration, find that there was, in fact, no viable basis for asserting a national origin discrimination claim, it would leave the existence of a viable retaliation claim based upon the question of whether sufficient evidence had been presented on this motion of an objectively reasonable good faith basis on the part of Boakye-Yiadom to assert complaints of discrimination based upon his national origin." (*Id.* at 11.)

As an initial matter, the argument as framed by defendants – which challenges whether plaintiff participated in protected activity – hinges on the resolution of their arguments in support of dismissing plaintiff's NYHRL national origin discrimination claim.  The Court, however, denied defendants' motion to reconsider and dismiss that claim.  Moreover, defendants' assertion is based on the mistaken belief that for plaintiff to have engaged in protected activity, he must have opposed conduct actually prohibited by Title VII.  *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) ("To prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII.").  In the incomplete copy of plaintiff's EEOC Charge submitted by

---

[6]  "To make out a prima facie case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action."  *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

defendants in support of their motion for summary judgment,[7] plaintiff specifically states that he was singled out by Laria due to his national origin. Thus, defendants' argument seeking reconsideration and dismissal of plaintiff's Title VII retaliation claim based on the lack of protected activity must fail.

Alternatively, defendants maintain that a causal connection between any of the adverse employment actions and the filing of the EEOC Charge cannot be established.[8] (Defs.' Recons. Mem. at 11.) Citing to their previously submitted memorandum in support of their motion for summary judgment, defendants essentially renew their previous contention that the mentioned adverse employment actions preceded the protected activity, and thus causation cannot be established. In the November 2012 Order, the Court made the following determination on this very contention:

> Notwithstanding the temporal proximity between the protected activity and the adverse employment actions, defendants attempt to align this case with others that have declined to find an inference of retaliation where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had

---

[7] Attached as Exhibit 94 to the appendix of exhibits for defendants' motion for summary judgment is plaintiff's EEOC Charge. In conjunction with the EEOC Charge, plaintiff submitted an attachment to the EEOC which, based on the text on the bottom of the first page, was longer than one page. Defendants, however, only submitted to the Court the first page of this attachment.

[8] It is noteworthy that defendants are incorrect when they state that the EEOC Charge was found to be the only action by plaintiff that constituted protected activity. (Defs.' Reply at 8.) Although the Court concluded in the November 2012 Order that the July 15, 2008 Memo could not be considered protected activity, the Court did not make a similar ruling with regard to the September 4, 2008 Memo. *See Boakye-Yiadom*, 2012 WL 5866186, at *11-12. Instead, the Court concluded that the record presently before it was devoid of evidence that showed that the School District ever received the memo. *Id.* at 13. Moreover, the November 2012 Order made clear that there were other actions asserted to be protected activity by plaintiff that the Court did not need to address. *Id.* at 11 n.13.

> ever engaged in any protected activity." *Slattery*, 248 F.3d at 95;
> *accord Bernard v. JP Morgan Chase Bank NA*, 408 F. App'x 465,
> 469 (2d Cir. 2011). After considering the evidence, including the
> specific letters referenced by defendants, the Court is not persuaded
> that adverse job actions began before plaintiff's protected activity
> started to occur. As such, a reasonable jury could find that plaintiff
> has established the required causal link for a prima facie case of
> retaliation.

*Boakye-Yiadom*, 2012 WL 5866186, at *14. Because the Court previously considered this

argument in the underlying summary judgment motion, defendants' attempt to relitigate this

issue by way of a motion for reconsideration is improper. *See Schrader*, 70 F.3d at 257 ("[A]

motion to reconsider should not be granted where the moving party seeks solely to relitigate an

issue already decided."); *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, 2006

WL 721862, at *2 (S.D.N.Y. Mar. 22, 2006) (concluding that a motion for reconsideration "is

not one in which a party may reargue those issues already considered when a party does not like

the way the original motion was resolved") (internal quotation marks and citation omitted);

*Pannonia Farms, Inc. v. USA Cable*, 2004 WL 1794504, at *2 (S.D.N.Y. Aug. 10, 2004) ("A

motion for reconsideration is not, however, a 'second bite at the apple' for a party dissatisfied

with a court' ruling."). Defendants, therefore, fail to demonstrate that reconsideration is

warranted as to plaintiff's Title VII retaliation claim, and, as such, their motion is denied.

### CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration is denied in its entirety.

The parties are directed to file a revised joint pre-trial order within 30 days of this Memorandum

and Order to accurately reflect the remaining claims and defenses, update their respective witness

and exhibit lists, and to make any other necessary changes so that the document is current. Once

the pre-trial order is filed, the Court will schedule a final pre-trial conference.

**SO ORDERED.**

Dated: Central Islip, New York
      June 18, 2013

_____/s/_____
Denis R. Hurley
United States District Judge